IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TAMARA WAREKA *p/k/a* TAMARA WILLIAMS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:23-CV-246-RP |
| JW SANDERS PLLC *d/b/a* REJUVENATE AUSTIN, JESSICA WRIGHT SANDERS, and DOES 1–10, | § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Plaintiff Tamara Wareka p/k/a Tamara Williams's ("Plaintiff") motion for summary judgment. (Dkt. 29). Defendants JW Sanders PLLC d/b/a Rejuvenate Austin ("Rejuvenate Austin") and Jessica Wright Sanders ("Sanders") (collectively, "Defendants") filed a response in opposition, (Dkt. 31), and Plaintiff filed a reply, (Dkt. 37). Having considered the parties' briefing, the factual record, and the relevant law, the Court will grant in part Plaintiff's motion for summary judgment.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed her complaint in this action on March 6, 2023, (Dkt. 1), and an amended complaint on October 18, 2023, (Dkt. 25). Plaintiff sues Defendants for copyright infringement under 17 U.S.C. § 101 *et seq.* During the discovery phase of this litigation, on September 7, 2023, Plaintiff served Defendants requests for admissions ("RFA"). (Order, Dkt. 36, at 1). Plaintiff then contacted Defendants after they failed to timely respond and agreed to extend the deadline by one week, from October 10 to October 17, 2023 (*Id.*). Defendants did not ultimately serve responses until October 23, 2023. (*Id.*).

In support of her motion for summary judgment, Plaintiff argued that her requests for admissions should be deemed admitted under Federal Rule of Civil Procedure 36 because Defendants failed to timely respond to the RFAs. (Mot., Dkt. 29, at 3). Defendants responded by filing their response to the summary judgment motion, (Dkt. 31), and a separate motion to withdraw their deemed admissions, which argued that Defendants' late response to the RFAs was inadvertent, (Dkt. 30). This Court referred Defendants' motion to withdraw admissions to United States Magistrate Judge Susan Hightower. (Text Order dated February 6, 2024). On February 29, 2024, Judge Hightower issued an order denying Defendants' motion to withdraw deemed admissions. (Order, Dkt. 36). Judge Hightower found that Defendants had not shown that withdrawal would promote the presentation of the case on its merits because they did not offer evidence that any of the admissions were contrary to the record. (*Id.* at 3–4). Judge Hightower also found that withdrawal would prejudice Plaintiff. (*Id.* at 5). Accordingly, in recounting the factual background of this case, the Court relies in part on Defendants' deemed admissions.

### B. Factual Background

Plaintiff is a professional photographer who specializes in beauty and fashion photography. Her work has been featured in publications such as *Vogue*, *Harper's Bazaar*, *Marie Claire*, *Elle*, *L'Officiel*, *Glamour*, *Cosmopolitan*, and *Maxim*. (Mot., Dkt. 29, at 1). Plaintiff attests that she never allows commercial entities to use her photographs without purchasing a license or without her express permission. (Williams Decl., Dkt. 29-5, ¶ 6). Licensing is important to her business so she can be compensated for her work and so she can control how her work is used because there are brands and industries that she does not support and with which she does not want to associate her name or work. (*Id.* ¶¶ 7, 8).

At issue in this litigation are two of Plaintiff's photographs (collectively, the "Photographs"). The first photograph is of model Belle Johnson (the "Johnson Photograph"). The Johnson Photograph is reproduced below:



(Johnson Photograph, Dkt. 29-1, at 22). The Johnson Photograph was originally published in 2017 and registered with the United States Copyright Office ("USCO") as part of the group registration VA 2-116-919, with an effective registration date of August 23, 2018. (Copyright Registration, Dkt. 29-1, at 108–09). The second photograph is of model Hilda Dias Pimentel (the "Dias Pimentel Photograph"). The Dias Pimental Photograph is reproduced below:



(Dias Pimental Photograph, Dkt. 29-1, at 23). The Dias Pimental Photograph was originally

published in 2018 and registered with the USCO as part of the group registration VA 2-116-887,

with an effective registration date of August 23, 2018. (Copyright Registration, Dkt. 29-1, at 108–

09). Plaintiff is the sole author and exclusive rights holder of both photographs. (Williams Decl.,

Dkt. 29-5, ¶ 9).

Defendant Rejuvenate Austin is a luxury medical practice specializing in anti-aging and

wellness treatments, and Defendant Sanders was the principal owner of Rejuvenate Austin at all

times relevant to this litigation. (Mot., Dkt. 29, at 1). Rejuvenate Austin maintains two social media

accounts that they use to attract user traffic, market and promote its services, and increase its

customer base and revenue for the company. (*Id.* at 1–2). It has an Instagram page under the handle

@rejuvenateuaustin and a Facebook page at www.facebook.com/rejuvenateaustin. (*Id.*). On April 3,

2022, Plaintiff's agent, Lauren Kelly ("Kelly"), discovered that Rejuvenate Austin had used the

Photographs in two separate Instagram posts, posted in 2020. (Kelly Decl., Dkt. 29-3; Instagram

Posts, Dkt. 29-1, at 32–33, 36–37). Plaintiff had never authorized Defendants to use the

Photographs in these Instagram posts. (Williams Decl., Dkt. 29-5, ¶ 16). The Instagram posts are reproduced below:



(Instagram Posts, Dkt. 29-1, at 32–33, 36–37).

Thereafter, Kelly sent evidence of the Instagram posts to Plaintiff's counsel. (Kelly Decl., Dkt. 29-3). On April 14, 2022, Plaintiff's counsel mailed Defendants a cease-and-desist letter. (Leath, Decl., Dkt. 29-4, ¶ 15). Plaintiff's counsel received a response from Defendants' counsel on April 28, 2022, and the parties communicated through January 2023 in an attempt to resolve this dispute.

(*Id.* ¶ 16). During this time, Rejuvenate Austin continued to use the Dias Pimental Photograph on its Instagram page, so Plaintiff's counsel sent another correspondence to Defendants, indicating that the Dias Pimental Photograph needed to be removed from Instagram as part of the resolution to this dispute. (*Id.* ¶¶ 17, 18; Second Letter, Dkt. 29-1, at 60–68). However, Defendants continued to use the Dias Pimental Photograph on its Instagram page at least through February 7, 2023. (Ex. 7, Dkt. 29-1, at 40).

Plaintiff filed this action on March 6, 2023. (Compl., Dkt. 1). After this suit was filed, in September 2023, Plaintiff discovered that the Photographs were also being used by Rejuvenate Austin in two separate posts on their Facebook page, also posted in 2020. (Mot., Dkt. 29, at 2; Facebook Posts, Dkt. 29-1, at 43, 46). The Facebook posts are reproduced below:





(Facebook Posts, Dkt. 29-1, at 43, 46). On September 7, 2023, Plaintiff's counsel sent a third cease-and-desist correspondence to Defendants' counsel, (*see* Mot., Dkt. 29, at 2), and subsequently filed her amended complaint to include the Facebook posts, (Dkt. 25).

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). Courts must view the summary judgment evidence in the light most favorable to the nonmovant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

### III. DISCUSSION

Plaintiff moves for summary judgment on her copyright infringement claims. She argues that it is undisputed that Defendants are both directly and vicariously liable for copyright infringement. Plaintiff further contends that Defendants willfully infringed her copyrights. Plaintiff also argues that she is entitled to summary judgment on all Rejuvenate Austin's affirmative defenses: fair use, de minimis use, and innocent intent. Plaintiff does not seek summary judgment on damages and requests that further proceedings be conducted on damages should summary judgment be granted. However, she also requests that the Court recognize that she is entitled to seek statutory damages.

Defendants dispute that summary judgment is appropriate on these various claims and defenses. Defendants protest that Plaintiff is seeking summary judgment on the basis of Defendants' deemed admissions. (Resp., Dkt. 31, at 8). However, there is nothing inappropriate about relying on Defendants' admissions during summary judgement. Federal Rule of Civil Procedure 56 specifically states that a party may support her motion for summary judgment using "admissions." Fed. R. Civ. P. 56(c)(1)(A); *see also In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) ("Federal Rule of Civil Procedure 56(c) specifies that 'admissions on file' can be an appropriate basis for granting summary

judgment."). Defendants' deemed admissions—that they uploaded the Photographs to their Instagram page and did not obtain a license to use them—concern the merits of the case. As Judge Hightower stated in her order denying Defendants' motion to withdraw deemed admissions, at no point in their motion to withdraw admissions did Defendants offer any evidence that any of their admissions are contrary to the record. (Order, Dkt. 36, at 3). Defendants' response to Plaintiff's motion for summary judgment also contains no indication that any of their admissions are inaccurate. Further, Defendants' admissions do not inhibit Defendants from arguing that a genuine dispute of material fact exists as to their affirmative defenses.

Accordingly, Plaintiff's motion for summary judgment is procedurally appropriate. The Court will first consider whether summary judgment is warranted as to each copyright claim and then will address whether summary judgment is warranted against any of Defendants' affirmative defenses.

### A. Copyright Infringement

#### 1. Direct Infringement

To prove copyright infringement, a plaintiff must establish "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 549 (5th Cir. 2015) (quoting *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007)).

As to the first element, copyright protection is afforded to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). A certificate of registration validly obtained from the USCO before or within five years of first publication of a work constitutes prima facie evidence of the originality of the work and of the facts stated therein, including ownership. *See* 17 U.S.C. § 410(c). Here, Plaintiff is entitled to the statutory presumption because it is undisputed that Plaintiff registered the Photographs within five years of their first publication. The Johnson

Photograph was originally published in 2017, and the Dias Pimental Photograph was originally published in 2018. (Copyright Registration, Dkt. 29-1, at 108–09). Both were registered with the USCO on August 23, 2018. (Copyright Registration, Dkt. 29-1, at 108–09). (*Id.*). Even without the statutory presumption of originality, the Photographs easily qualify as original works of authorship. Photographs are generally viewed as creative expressions and have long been the subject of copyright protection. *See* 17 U.S.C. § 102(a)(5) (extending copyright protection to "pictorial, graphic, and sculptural works"). A simple viewing of the Photographs demonstrate that they are creative, involving creative decisions related to, *inter alia*, subject matter, angle of the photograph, lighting, and pose. These creative decisions are sufficient to meet the relatively low bar for originality. *See Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Accordingly, the Court finds that Plaintiff owns valid copyrights in the Photographs.

As to the second element, factual copying requires evidence that the defendant "actually used the copyrighted material to create his own work." *Batiste v. Lewis*, 976 F.3d 493, 502 (5th Cir. 2020) (citation omitted). Absent direct evidence of copying, "a plaintiff can raise an inference of factual copying from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Id.* (internal quotation marks omitted). "A plaintiff can show probative similarity by pointing to any similarities between the two works, even as to unprotectable elements, that, in the normal course of events, would not be expected to arise independently." *Id.* (internal quotation marks omitted). As to the third element, a purported copy "must bear a substantial similarity to the protected aspects of the original." *Peel & Co., Inc. v. The Rug Mkt.*, 238 F.3d 391, 398 (5th Cir. 2001). This usually requires a "side-by-side comparison" of the works' protectable elements "to determine whether a layman would view the two works as 'substantially similar.'" *Nola Spice Designs*, 783 F.3d at 550. Although the question of substantial

similarity "typically should be left to the factfinder," it can be decided as a matter of law in appropriate circumstances. *Nola Spice*, 783 F.3d at 550.

Plaintiff has sufficiently proven both factual copying and substantial similarity. As to access, Defendants admit that their social media manager Melissa Fabbio copied the Photographs from Pinterest. (Defs.' Resp. to Interrogatories, Dkt. 31-1, at 1–3). As to probative similarity and substantial similarity, it is clear that the images used in the social media posts are the Johnson and Dias Pimental Photographs because, aside from some slight cropping, they are the exact same.

Defendants raise a few defenses that are ultimately unavailing. First, although Defendants admit that they copied the images in their posts from Pinterest, they dispute that those images are the same photographs that Plaintiff owns the copyrights to. (Resp., Dkt. 31, at 8–9). However, Defendants do not provide any evidence to suggest that the photographs are different. Their bare assertion that the images could be different is not sufficient to rebut Plaintiff's evidence and create a genuine dispute as to whether the images in the posts are Plaintiff's photographs. Second, Defendants assert that because the Photographs appeared on Pinterest without any copyright stamps, author identification, or license information, Defendants did not have the opportunity to obtain authorization or a license to use the Photographs. (*Id.* at 9). They also suggest that the Photographs were placed into the public domain because they appeared on Pinterest. (*Id.*). On both arguments, Defendants are mistaken. Copyrighted material does not enter the public domain simply because it appears online. Further, a copyright notice has not been required on copyrighted material since the United States entered the Berne Convention in 1989. *See* 17 U.S.C. § 405(a); *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 48 (5th Cir. 1995). Rather, it is incumbent upon a party wishing to use content to ensure that they clear the content by having permission to use the content. In this case, it is undisputed that Defendants did not contain a license to use the Photographs on its social media posts and that Plaintiff did not authorize such activity. (Mot., Dkt. 29, at 6–7).

Plaintiff has demonstrated that there is no genuine dispute as to whether Plaintiff owns a valid copyright in the Photographs, whether Defendants copied the Photographs, and whether Defendants had permission to do so. Defendants displayed the Photographs without permission and in doing so violated Plaintiff's exclusive right to publicly display her Photographs. *See* 17 U.S.C. § 106(5). Accordingly, the Court finds that Plaintiff has established a prima facie case of direct copyright infringement and Plaintiff is entitled to summary judgment on her direct copyright infringement claim.

### 2. Vicarious Liability

Next, the Court turns to Plaintiff's vicarious liability claim. "Vicarious copyright infringement occurs when a defendant 'profit[s] from direct infringement while declining to exercise a right to stop or limit it.'" *Dynastudy, Inc. v. Houston Indep. Sch. Dist.*, 325 F. Supp. 3d 767, 777 (S.D. Tex. 2017) (citing *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). "If a defendant has a direct financial interest in the infringing activity and has the right and ability to supervise the activity which causes the infringement, then he should be held vicariously liable." *Playboy Enters. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1176 (N.D. Tex. 1997).

Viewing the social media posts, it is clear that Rejuvenate Austin had a direct financial interest in the infringing activity. On both Instagram and Facebook, the Johnson Photograph was used in a post that promoted Rejuvenate Austin's "super easy and quick" financing options and included the directive, "Time to book that next appointment!" (Johnson Photograph Posts, Dkt. 29-1, at 32, 43). Similarly, the Dias Pimental Photographs appeared in posts promoting Rejuvenate Austin's specials for microneedling, versa lips, and injectables services and listing prices or discounts on those services. (Dias Pimental Photograph Posts, Dkt. 29-1, at 36, 46).

Defendants argue that Plaintiff has not proven that they received a financial benefit from the posts or what the financial benefit was. (Resp., Dkt. 31, at 11). They contend that the posts did not

serve a specific purpose and that they received very few views or internet traffic. (*Id.*). However, the posts themselves reveal that they were done to promote Defendants' business and increase their profits. The Photographs added a visual element to the text in the posts and enhanced the attractiveness of those posts. The amount of traffic that the posts received does not change that conclusion, as any traffic to the posts contributes to the financial benefit that Defendants received. It is also undisputed that Rejuvenate Austin generally maintains its social media accounts to attract user traffic, market and promote its services, and increase its customer base and revenue for the company. (Mot., Dkt. 29, at 1–2). This evidence is sufficient to prove that Defendants had a sufficiently direct financial interest in the infringing social media posts. *See Playboy Enters.*, 968 F. Supp. at 1176 (finding that the presence of infringing photographs that "enhance the attractiveness" of an infringer's website is sufficient to show a direct financial interest even where the photographs themselves were not directly monetized).

As to the right and ability to supervise the infringing activity prong, "a defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 730 (9th Cir. 2007). Here, it is undisputed that Rejuvenate Austin maintains the social media accounts in question and that Sanders is the principal owner of Rejuvenate Austin. (Defs.' Resp. to Interrogatories, Dkt. 31-1, at 1). Further, Defendants themselves admit that their social media manager was the one who copied the photographs off Pinterest and created the posts. (*Id.* at 1–2).

Therefore, there is no genuine dispute that Defendants had a financial interest in the infringing social media posts and a legal right to stop the Photographs from being posted. Accordingly, Plaintiff is entitled to summary judgment on her vicarious liability claim.

**B. Affirmative Defenses**

Next, Plaintiff asks that the Court grant her summary judgment on three affirmative

defenses raised in Defendants' first amended answer, (Dkt. 28): fair use, de minimis use, and

innocent intent. (Mot., Dkt. 29, at 13–18). The Court first addresses fair use and de minimis use.

The Court addresses the third defense of innocent intent in its discussion of damages.

1. Fair Use

The Copyright Act lists four non-exclusive factors that a court must weigh when

determining whether a use of a copyrighted work is fair: (1) the purpose and character of the use,

including whether such use is of a commercial nature or is for nonprofit educational purposes; (2)

the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation

to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or

value of the copyrighted work. 17 U.S.C. § 107.

First, in considering the "purpose and character" of a use of a copyrighted work, courts look

to whether the new work is "transformative," that is whether the new work "merely supersedes the

objects of the original creation . . . or adds something new, with a further purpose or different

character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music,

Inc.*, 510 U.S. 569, 579 (1994) (cleaned up). Commercial use is also an important consideration in the

first fair use factor, and a profit motivation may weigh heavily against fair use. *See Harper & Row

Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). Here, as explained above, each of the social

media posts used the Photographs to market and promote Rejuvenate Austin's products and

services, rendering Defendants' use of the Photographs as commercial in nature. Further,

Defendants' use of the Photographs in social media posts did not transform the Photographs into

new works with a new purpose. Rather, Defendants used the Photographs in the same manner that

Plaintiff typically licenses her works: to display in conjunction with marketing and promoting beauty

products and services. Defendants did not transform Plaintiff's photographs by copying them from Pinterest but rather used them to quickly promote their services while depriving Plaintiff of her licensing fee. *See Sadowski v. BackChina, LLC*, 2018 WL 3432044, at *2 (S.D. Tex. 2018) (finding that a defendant did not transform a picture by recopying it from another source). Accordingly, the first factor weighs against a finding of fair use.

Second, in considering the "nature of the copyrighted work," courts may consider, among other things, whether the work is expressive or creative, with fair use being more likely to be found in factual works than in creative works. *Cariou v. Prince*, 714 F.3d 694, 709 (2d Cir. 2013). This factor "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. Courts may also consider whether the work was previously published. *Katz v. Google Inc.*, 802 F.3d 1178, 1183 (11th Cir. 2015).

Photographs have long been protected by copyright law. *See* 17 U.S.C. § 102(a)(5) (extending copyright protection to "pictorial, graphic, and sculptural works"); *Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884) (holding photographs were entitled to copyright protection). This is because photographs are generally viewed as aesthetic works due to the various creative decisions that photographers make in creating the work. *See Burrow–Giles Lithographic Co.*, 111 U.S. at 61. Defendants briefly argue that this factor should weigh in favor of fair use because the Photographs are not creative or original but rather are close-up photographs of unknown women. (Resp., Dkt. 31, at 10). Defendants protest that Plaintiff has not explained what creative elements she used in creating the Photographs. (*Id.*). However, a photograph can be creative even if it is a close-up shot of its subject. Viewing the Photographs, it is apparent that Plaintiff made several creative choices in creating them, such as choosing the angles and colors of the Photographs and working with the models on their expressions in the pictures. Thus, the Photographs are creative works that copyright

law is intended to protect. It is also not disputed that the Photographs were published prior to infringement. Accordingly, the second factor weighs against a finding of fair use.

Third, courts consider the "amount and substantiality of the portion used in relation to the copyrighted work as a whole." *Harper & Row*, 471 U.S. at 564. "[T]he more of a copyrighted work that is taken, the less likely the use is to be fair, and . . . even a less substantial taking may be unfair if it captures the essence of the copyrighted work." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2nd Cir. 1998). "Though not an absolute rule, 'generally, it may not constitute a fair use if the entire work is reproduced.'" *Id.* (quoting Nimmer on Copyright, § 13.05[A][3] at 13-178 (1997)). Here, Defendants used the entire Johnson Photograph in their social media posts. As for the Dias Pimental Photograph, Defendants cropped the picture and used only the top half of the picture that contains the model's face. However, the portion used was the "heart" of the copyrighted work, which is a substantial amount of taking. *See Harper & Row*, 471 U.S. at 564–65. Accordingly, the third factor weighs against a finding of fair use.

Last, the fourth element looks to the effect of the use upon the potential market for and value of the copyrighted work. "We consider actual market harm but, more broadly, whether widespread use of the work in the same infringing fashion 'would result in a substantially adverse impact on the potential market' for the original work and any derivatives." *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313 (5th Cir. 2022) (quoting *Campbell*, 510 U.S. at 590). Here, Plaintiff's business depends upon convincing publications and businesses to pay a licensing fee to use her photographs. Undoubtedly, unlicensed use of the Photographs of the sort engaged in by Defendants would eliminate the market for Plaintiff's works. Defendants argue that because the Photographs were already posted online and thus in the "public domain," their posts alone did not undermine the market for Plaintiff's works. (Resp., Dkt. 31, at 11). As explained above, the fact that the Photographs were online does not mean that they were in the public domain. Regardless of how

the Photographs got posted online, it remains true that any unlicensed use of the Photographs undermines Plaintiff's business in licensing those works. Therefore, the last fair use factor weighs against fair use.

In sum, all four factors weigh against a finding of fair use. Defendants' use of the Photographs was commercial in nature and non-transformative. Defendants copied a creative work that is entitled to copyright protection and in doing so they used the entirety of one copyrighted work and a substantial portion of another. And Defendants' unauthorized use of these works imposes a threat on the market for original photographs. Accordingly, Defendants' social media posts were not fair uses of the Photographs, and Plaintiff is entitled to summary judgment on this affirmative defense.

### 2. De Minimis Use

Next, Plaintiff requests summary judgment on Defendants' de minimis use defense. The de minimis use doctrine provides that if unauthorized copying is sufficiently trivial, "the law will not impose legal consequences." *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 639 (S.D. Tex. 2007) (quoting *On Davis v. The Gap, Inc.*, 246 F.3d 152, 172–73 (2d Cir. 2001). "To establish that an infringement is de minimis and, therefore, not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial that it falls below the threshold of substantial similarity." *Fomo Factory, LLC v. Gallery Model Homes, Inc.*, No. CV H-21-1022, 2023 WL 4849438 (S.D. Tex. July 28, 2023).

Defendants concede that the de minimis use defense is not applicable to the Johnson Photograph. (Resp., Dkt. 31, at 15). However, they assert that it does apply to the Dias Pimental Photograph because the Dias Pimental post only includes about half of the photograph, the half focused on the model's face. (*Id.*). This argument is unavailing. As explained above, the Court has already found substantial similarity between the Dias Pimental Photograph and the post containing a

portion of that photograph. The Court has also found that the portion that the Defendants used was the "heart" of the Dias Pimental Photograph. Accordingly, Defendants' use of the Dias Pimental Photograph is not de minimis. *See Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002) ("A de minimis defense does not apply where the qualitative value of the copying is material."). Plaintiff is entitled to summary judgment on this defense.

### C. Damages

1. Entitlement to Statutory Damages

Last, the Court makes findings related to damages. The Copyright Act allows plaintiffs to recover either actual damages and the infringer's profits, or statutory damages. 17 U.S.C. § 504(a). Plaintiffs may elect to recover statutory damages if their work was registered before the defendant's infringement. *See id.* § 412. Here, Plaintiff asks for summary judgment on whether she is entitled to pursue statutory damages and attorneys' fees, although she does not seek summary judgment on the amount of damages she should receive. (Mot., Dkt. 29, at i, 11). Defendants protest that this is an improper request but do not actually argue that Plaintiff is barred from seeking statutory damages. (*See* Resp., Dkt. 31, at 12). The Court finds nothing inappropriate about Plaintiff asking for this finding as it will help simplify the issues remaining in the case and because the substance of the issue is not disputed. Because it is undisputed that Plaintiff registered the Photographs prior to the infringements, she may seek statutory damages and attorney's fees under 17 U.S.C. § 412 in further proceedings.

2. Willfulness

Although scienter is not a prerequisite to a finding of copyright infringement, the Copyright Act provides that enhanced statutory damages may be awarded if an infringement is deemed to be willful. *See* 17 U.S.C. § 504(c)(2). Plaintiffs establish that an infringement is "willful" upon a showing that (1) the defendant knew it was infringing on the copyright holder's rights, or (2) the defendant's

actions resulted from "reckless disregard" for, or "willful blindness" to, the copyright holder's rights. *Stokes v. Carcavba, LLC*, 2024 WL 1023068, at *7 (W.D. Tex. March 8, 2024). Reckless disregard can be demonstrated when a party refuses to investigate or attempt to determine whether photos are subject to copyright protections. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 748 (9th Cir. 2019). "Evidence that the defendant received notice before the infringement occurred has been deemed 'persuasive evidence of willfulness.'" *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp.2d 995, 1002 (S.D. Tex. 2000) (quoting *Swallow Turn Music v. Wilson*, 831 F. Supp. 575, 579 (E.D. Tex. 1993)).

Plaintiff argues that Defendants' actions were willful because Plaintiff's counsel sent Defendants a cease-and-desist correspondence in April 2022 that let Defendants know that they were not authorized to use the Photographs on the Rejuvenate Austin Instagram page, and it is undisputed that Defendants received this correspondence. (Leath Decl., Dkt. 29-4, ¶¶ 15, 16). Plaintiff's counsel then followed up with a second cease-and-desist correspondence in January 2023. (*Id.* ¶ 18; Second Letter, Dkt. 29-1, at 60–68). However, Defendants continued to use the Dias Pimental Photograph on their Instagram page at least through February 7, 2023. (*Id.* ¶ 17, 20; Ex. 7, Dkt. 29-1, at 40). Plaintiff further argues that Defendants' actions were willful because despite receiving two cease-and-desist correspondences about their unauthorized use of Plaintiff's works, Defendants continued to use the Photographs on their Facebook page, as late as September 2023, six months after this case was filed. (Mot., Dkt. 29, at 2; Facebook Posts, Dkt. 29-1, at 43, 46). The discovery of this unauthorized use led to a third cease-and-desist letter. (Mot., Dkt. 29, at 2).

Defendants respond that their infringement was not willful because (1) the Photographs were readily available on Pinterest and contained no copyright notices; (2) Defendants are unsophisticated parties with little knowledge of copyright law; and (3) Defendants did not continue to publish new Instagram posts with the Photographs after receiving the first cease-and-desist letter. (Resp., Dkt. 31, at 13). Defendants also argue that the first two cease-and-desist letters did not put

them on notice of the infringing nature of the Facebook posts because they only mentioned the Instagram posts. Once the third letter came that specifically mentioned the Facebook posts, they promptly removed those posts. (*Id.* at 13–14).

The Court finds that Plaintiff has carried her burden in proving that Defendants' copyright infringement of the Dias Pimental Photograph was willful. Defendants do not offer any explanation as to why they continued to use the Dias Pimental Photograph on their Instagram for ten months after they received the first cease-and-desist letter. It is also undisputed that Defendants received the cease-and-desist letter. Because such correspondence put them on notice that they were infringing Plaintiff's works and they did not act to promptly remove the Dias Pimental post, the continued use of the post constituted willful infringement. Plaintiff is thus entitled to summary judgment on the issue of willful infringement as it pertains to the Dias Pimental Photograph.

As for the Facebook posts, however, the Court finds that Defendants have raised a genuine dispute as to whether the continued existence of the Facebook posts constituted willful infringement of the Johnson Photograph. A reasonable jury could find that the first two cease-and-desist letters reasonably put Defendants on notice that they should search all their social media accounts for the infringing photographs. However, a reasonable jury could also find that only the third cease-and-desist correspondence properly gave notice because it was the only one that specifically mentioned the Facebook posts. In coming to that conclusion, a jury could reasonably consider that Defendants' unsophisticated understanding of copyright law did not lead them to search their Facebook posts for more infringing posts until Plaintiff specifically directed them to the infringing Facebook posts. In other words, a reasonable jury could find that Defendants' failure to remove the Facebook posts was merely negligent, as opposed to willful. Thus, viewing the evidence in the light most favorable to Defendants, the Court will deny Plaintiff summary judgment on the issue of whether Defendants' infringement of the Johnson Photograph was willful.

### 3. Defense of Innocent Intent

Last, Plaintiff requests summary judgment on Defendants' defense that their "infringement was innocent, non-infringing, and not willful under the Copyright Act, and Defendants were not aware and had no reason to believe that their acts constituted an infringement of a copyright." (1st Am. Answer, Dkt. 28, at 9). Innocent intent is not a defense to a finding of liability in copyright actions because copyright is a strict liability tort, and a copyright owner need not prove intent to establish liability for copyright infringement. *See Joe Hand Promotions, Inc. v. Johnson*, No. W-19-CV-00472-ADA, 2022 WL 3233433, at *3 (W.D. Tex. Aug. 9, 2022) (collecting cases). However, innocent intent can be relevant in a damages determination. The Copyright Act provides that courts may reduce the total damages award if the violator proves that it "was not aware and had no reason to believe that its acts constituted a violation." 17 U.S.C § 1203(c)(5)(A). The Copyright Act also provides that courts "may reduce the award of statutory damages to a sum of not less than $200" when the infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2). Defendants argue that the innocent intent defense applies to them because they found the Photographs on Pinterest and did not know that they were copyrighted works because they did not contain any identifying marks pertaining to copyright status or ownership.

The Court's conclusion on the innocent intent defense mirrors what is laid out above in the discussion of willful infringement. The Court finds that Defendants' use of the Dias Pimental Photograph was not innocent because the photograph continued to be used in an Instagram post after Defendants received two cease-and-desist correspondences. As for the Johnson Photograph, Defendants have raised a genuine dispute as to whether their use of this work was innocent because they are unsophisticated parties who found the photograph online with no marks indicating its copyrighted status. Plaintiff is therefore entitled to summary judgment on the innocent intent

defense as it pertains to the Johnson Photograph, but summary judgment is not granted on the innocent intent defenses as to the Dias Pimental Photograph.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiff's motion for summary judgment, (Dkt. 29), is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is entitled to summary judgment on her claims of direct infringement and vicarious liability. Plaintiff is also entitled to summary judgment on Defendants' fair use and de minimis use defenses.

The Court will consider the appropriate amount of damages and costs in further proceedings. Plaintiff may seek statutory or actual damages in accordance with this order and 17 U.S.C. § 504(a). On the issues of willful infringement and Defendants' innocent intent defense, Plaintiff is entitled to summary judgment as to the Dias Pimental Photograph but denied summary judgment on those issues as to the Johnson Photograph.

**SIGNED** on May 3, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE